UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RILEY E. HUDSON, Plaintiff, v. COMMISSIONER OF SOCIAL SECURITY, Defendant. | CASE NO. 2:25-cv-00719-TL<br><br>ORDER AFFIRMING THE COMMISSIONER AND DISMISSING THE CASE |

Before the Court is Plaintiff Riley Hudson's Complaint for Judicial Review of the denial of her application for Supplemental Security Income. Dkt. No. 3 (Complaint). Plaintiff contends the Administrative Law Judge ("ALJ") erred by (1) failing to find bicornate uterus is a severe impairment at step two, and (2) by rejecting Plaintiff's testimony about the severity of her mental health symptoms. Dkt. No. 8 at 1 (Plaintiff's Opening Brief).

Having reviewed Plaintiff's opening brief (Dkt. No. 8), Defendant Commissioner of Social Security's response brief (Dkt. No. 13), and the relevant record, the Court AFFIRMS the Defendant's final decision and the complaint is DISMISSED WITH PREJUDICE.

## I. BACKGROUND

Plaintiff is currently 29 years old,[1] has at least a high school education, and has worked as a nanny. Dkt. No. 6-2 at 20, 31 (ALJ Decision). On April 13, 2021, she applied for benefits, alleging disability as of October 1, 1996. *Id.* at 18. After Plaintiff applied for benefits, she was diagnosed with bicornate uterus. Dkt. No. 8 at 1. Plaintiff's disability application was denied initially and on reconsideration. Dkt. No. 6-2 at 18. The ALJ conducted a hearing on February 15, 2024, and issued a decision on April 18, 2024, finding Plaintiff not disabled. *Id.* at 18–67. To determine whether Plaintiff is disabled, the ALJ utilized the five-step disability evaluation process[2] and found:

> **Step one:** Plaintiff has not engaged in substantial gainful activity since April 13, 2021, the application date. *Id.* at 20.
>
> **Step two:** Plaintiff has the following severe impairments: depressive disorder, PTSD, and anxiety disorder. *Id.* Plaintiff's abdominal pain symptoms do not constitute a severe impairment because they were mild, transient, or otherwise caused no more than minimal functional limitations. *Id.* at 22.
>
> **Step three:** These impairments did not meet or equal the requirements of a listed impairment. *Id.* at 24 (citing 20 C.F.R. §§ 404.1520, 416.920).
>
> **Residual Functional Capacity:** Plaintiff can perform a full range of work at all exertional levels, with the following nonexertional limitations: complex tasks with occasional interaction with the public and frequent interaction with coworkers and supervisors. *Id.* at 25. There can be occasional changes in the work settings. *Id.*
>
> **Step four:** The transferability of job skills was not an issue because Plaintiff did not have past relevant work. *Id.* at 31.
>
> **Step five:** As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, she is not disabled. *Id.*

---

[1] Plaintiff will turn 30 in October 2026.

[2] 20 C.F.R. §§ 404.1520, 416.920.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Defendant's final decision. *Id.* at 2 (Notice of Appeals Council Action).

## II. LEGAL STANDARD

### A. Standard of Review

The Court will reverse the ALJ's decision only if the ALJ applied the wrong legal standard or it is not supported by substantial evidence in the record. *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The ALJ is responsible for evaluating evidence, in part by resolving conflicts in medical testimony and resolving any other ambiguities that might exist. *See id.* at 1149. When the evidence is susceptible to more than one interpretation, the ALJ's interpretation must be upheld if rational. *See id*. at 1154. The Court "must consider the entire record as a whole" and may not affirm the ALJ's decision "simply by isolating a specific quantum of supporting evidence." *Ghanim v. Colvin*, 763 F.3d 1154, 1160 (9th Cir. 2014) (*quoting Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (internal quotation marks omitted)). Finally, this Court "may not reverse an ALJ's decision on account of a harmless error." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1520c(c)(2)).

### B. The "Disabled" Determination

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Ford*, 950 F.3d at 1148 (citations omitted).

To determine whether a claimant is disabled under the definition provided in the Social Security Act (and, thus, eligible for benefits), an ALJ follows a five-step sequential evaluation

pursuant to 20 C.F.R. § 404.1520(a): (1) the claimant must not be engaged in "substantial gainful activity"; (2) the claimant's impairment or combination of impairments must be severe enough to significantly limit the claimant's "physical or mental ability to do basic work activities"; (3) the claimant's impairment(s) must meet or equal the criteria of an impairment in the "Listing of Impairments" ("Listings"); (4) upon assessment of the claimant's residual functional capacity ("RFC"), the claimant must not be able to perform their "past relevant work"; and (5) the claimant must not be able to make an adjustment to other work. *See Ford*, 950 F.3d at 1148–49.

If the claimant fails to make the required showing at any of these steps, the ALJ's inquiry ends, and the claimant is found to not have a disability under the Social Security Act. The burden of proof is on the claimant at steps one through four, but at the fifth step, it shifts to the agency to prove that "the claimant can perform a significant number of other jobs in the national economy." *Id.* at 1149 (citation omitted).

## III. DISCUSSION

The Court now turns to the two errors alleged by Plaintiff.

### A. Plaintiff's Bicornate Uterus

Plaintiff contends the ALJ erred by failing to find bicornate uterus is a severe impairment at step two. Dkt. No. 8 at 1. At step two of the five-step sequential inquiry, the Commissioner determines whether the claimant has a severe impairment or combination of impairments. *See* 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is severe if it "significantly limits" an individual's "ability to do basic work activities." 20 C.F.R. §404.1520(c) "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Webb v. Barhart*, 433 F.3d 683, 687 (9th Cir. 2005) (*quoting* SSR 85-28).

At step two, the ALJ did not find bicornate uterus is a severe impairment. Dkt. No. 8 at 1–2. The ALJ acknowledged Plaintiff's testimony that she suffers severe pelvic pain that extends into her back, starting two weeks before her period, making it difficult to move or sit up and causing Plaintiff to lie down with a heating pad for 5–7 days each month. Dkt. No. 6-2 at 20–21. An ALJ must consider the claimant's reported "location, duration, frequency and intensity of [her] pain or other symptoms." 20 C.F.R. § 416.929(c)(3)(ii). Here, the ALJ stated "regardless of any established or suggested diagnosis," Plaintiff's symptoms are not severe because they were mild, transient and caused no more than minimal limits. Dkt. No. 6-2 at 21. In support, the ALJ first found Plaintiff told an examining doctor (Dkt. No. 6-7 at 204 (Mental Status Evaluation)) she stopped working because she lacked transportation, which contradicts the claim that she stopped work due to pain. Dkt. No. 6-2 at 21. Second, the ALJ found the record does not show Plaintiff regularly reported to her providers her pain was so severe she could not move or sit for 5–7 days each month; instead, the ALJ noted the record shows Plaintiff generally denied severe pain and reported occasional cramping. *Id.*

Plaintiff argues the ALJ erred in discounting her testimony based upon statements made to an examining doctor. Dkt. No. 8 at 2. The statement upon which the ALJ relied was contained in a mental health evaluation conducted by Philip Vannoy Gibson, Ph.D. on November 22, 2021. Dkt. No. 6-7 at 203. Dr. Gibson noted Plaintiff "last worked as a nanny in 2019, which she did for two years before quitting her job because '[Plaintiff] got in a car accident and [had] no transportation.'" *Id.* at 204. The ALJ erred in relying on this statement because Dr. Gibson performed a mental health evaluation, did not address Plaintiff's physical problems or pain symptoms, and thus did not address or determine whether Plaintiff's pain symptoms affected her ability to perform gainful work. Moreover, Plaintiff stated she got into a car accident and Dr. Gibson never determined whether the accident caused Plaintiff to stop working. Dr. Gibson's

report was insufficient on its own for the ALJ to rely upon. However, the Court notes that Plaintiff testified: "I was in a car accident, disability conditions got severe after car accident" which would support the ALJ's ultimate conclusion. Dkt. No. 6-6 at 6 (Disability Report) Further, this was not the only evidence relied upon by the ALJ, as will be discussed later in this section.

The ALJ also found Plaintiff's testimony about the severity of her pelvic or abdominal pain was not consistent with the medical record in finding her pelvic and abdominal conditions are not severe at step two. Dkt. No. 6-2 at 21–22. An ALJ may not reject a claimant's subjective symptom testimony "solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991); *see also Byrnes v. Shalala*, 60 F.3d 639, 641–42 (9th Cir. 1995) (applying rule to subjective complaints other than pain). Nor can treatment records be cherry-picked; the ALJ must consider a particular record of treatment in light of the overall diagnostic record. *See Ghanim*, 763 F.3d at 1164. However, "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); s*ee also Smartt v. Kijakazi*, 53 F.4th 489, 498 (9th Cir. 2022) ("When objective medical evidence in the record is inconsistent with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony.").

Here, Plaintiff's medical record indicates that while she did experience intermittent severe abdominal/pelvic pain, *none* of these instances mention that Plaintiff's pain and symptoms were the result of the bicornate uterus condition. Dkt. No. 6-11 at 9, 11, 28, 30, 40, 64, 66, 68, 78, 84 (Behavioral Health Treatment Records), 101, 104, 133, 147, 158 (Emergency Department Records); Dkt. No. 6-12 (Radiology Treatment Records) at 35, 37, 42. These bouts of pain resulted from other conditions that she has not asserted as a basis for her appeal. *See generally* Dkt. No. 8.

As for the condition at issue in this appeal, the term "bicornate uterus" appears very few times in the treatment record. *See* Dkt. No. 6-7 at 540 (Office Treatment Records); Dkt. No. 6-11 at 116, 128; Dkt. No. 6-12 at 2, 11, 16, 23 (Urology Treatment Records), 35 (Radiology Treatment Records), 39, 40, 43–45 (Medical Opinion Letter). Plaintiff alleges disability beginning October 1, 1996. Dkt. No. 6-2 at 18. Yet, to the extent she is asserting that her bicornate uterus is the reason for her disability, the earliest mention in the medical records of this condition does not appear until February 11, 2022, when Plaintiff self-reported to a provider that "she was born with an upside down horseshoe kidney and possibly a bicornate uterus (she is unsure of the later)." Dkt. No. 6-7 at 540. Even then, there is no mention in the notes of that visit of any pain associated with the condition. *Id.* at 540–47. And but for one instance, all these references in the record to the condition simply either list or recount the existence of the condition with no discussion of the effect of the condition on Plaintiff or any symptom or difficulties experienced by Plaintiff as a result of having the condition. On the one occasion when the condition is discussed in connection with Plaintiff's symptoms, it is not raised by Plaintiff in the context of an examination or medical visit but, rather, is given in a response by Michelle Bowden, a treating provider, to a question framed and posed by Plaintiff's counsel in seeking social security benefits. Dkt. No. 6-12 at 45.

Plaintiff bears the burden to show that the ALJ harmfully erred, *see Molina*, 674 F.3d at 1111, but Plaintiff fails to meet this burden. Plaintiff does not point to any evidence in the treatment record showing bicornate uterus is a cause of her abdominal and pelvic pain complaints and thus fails to show the ALJ erred by failing to find bicornate uterus as a severe impairment. In fact, Plaintiff expressly admits Plaintiff's treatment notes do not reflect the functional limitations discussed at the hearing. Dkt. No. 8 at 3. Rather, Plaintiff relies entirely on the single-page opinion provided by Ms. Bowden to connect bicornate uterus to Plaintiff's symptoms and pain. Dkt. No. 6-

12 at 45. The ALJ rejected Ms. Bowden's opinion because it was "conclusory, insufficiently reported, and inconsistent with the longitudinal record." Dkt. No. 6-2 at 23.

The Court finds Ms. Bowden's solo opinion, in the absence of any other evidence in the medical record establishing bicornate uterus is a cause of Plaintiff's pain complaints, is insufficient grounds to show the ALJ's assessment of the medical record is unreasonable and erroneous. Further, given the medical record, the ALJ reasonably discounted the opinion provided by Ms. Bowden, stating that "the mere finding of a bicornate uterus is insufficient to substantiate the limitations indicated by Ms. Bowden." *Id*. For the same reasons, the ALJ reasonably discounted claimant's subjective symptom testimony.

Even if the Court found the evidence in the record is susceptible to more than one rational interpretation, "[the Court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Susan F. v. Comm'r, Soc. Sec. Admin.*, No. C22-5661, 2023 WL 4704160, at *4 (W.D. Wash. July 24, 2023) (*citing Molina*, 674 F.3d at 1111). The ALJ's determination that Plaintiff's bicornate uterus was not a severe impairment because Plaintiff's symptoms were mild, transient, or otherwise caused no more than minimal functional limitations is a reasonable interpretation of the overall record. As discussed above, the evidence does not show bicornate uterus causes Plaintiff's abdominal or pelvic pain complaints, and the Court thus cannot find the ALJ's determination is unreasonable or unsupported.

While one of the two reasons the ALJ provided is erroneous, the error is harmless because the other reason provided is valid and supported by substantial evidence. *See Carmickle*, 533 F.3d at 1162. Accordingly, the Court affirms the ALJ's determination that Plaintiff's bicornate uterus is not a severe impairment.

//

//

**B. Plaintiff's Mental Health Limitations**

Plaintiff contends the ALJ erroneously discounted her testimony about her mental health limitations. Dkt. No. 8 at 3. The ALJ did not find malingering and was thus required to articulate "clear and convincing reasons" to reject Plaintiff's testimony. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). The ALJ's reasons "must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation omitted); *see also Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017) (holding the ALJ must identify which testimony the ALJ found not credible and explain which evidence contradicted that testimony). General findings and conclusory statements without supporting evidence are thus insufficient. *See Brown-Hunter*, 806 F.3d at 494.

Evidence that medical treatment helped a claimant "return to a level of function close to the level of function they had before they developed symptoms or signs of their mental disorders . . . can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (internal quotations omitted); *compare Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (holding that "some improvement" in a person's symptoms "does not mean that the person's impairments no longer seriously affect her ability to function in a workplace") *with Kitchen v. Kijakazi*, 82 F.4th 732, 739 (9th Cir. 2023) (finding "a gradual improvement in [claimant's] functioning" a specific, clear, and convincing reason where it undermined the testimony given) (citation omitted).

While ALJs are not required to "perform a line-by-line exegesis," "'providing a summary of medical evidence . . . is not the same as providing clear and convincing *reasons* for finding the claimant's symptom testimony not credible.'" *Lambert v. Saul*, 980 F.3d 1266, 1277–78 (9th Cir.

2020) (*quoting Brown-Hunter v. Colvin*, 806 F.3d at 494 (emphasis and changes in original)). "[T]o satisfy the substantial evidence standard, the ALJ must . . . explain why the medical evidence is *inconsistent* with the claimant's subjective symptom testimony." *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024) (emphasis in original).

At the hearing before the ALJ, Plaintiff testified that she suffered from debilitating anxiety and panic attacks. Dkt. No. 6-2 at 51. Plaintiff stated that her symptoms were so severe that her fear of temperature and resulting panic attacks prevented her from showering, brushing her teeth, eating, or using the bathroom. *Id*. at 51, 57. Plaintiff further testified about her depression and indicated that she frequently sleeps during daytime hours and is currently homeless, which exacerbates her feelings of anxiety and depression. *Id*. at 56.

While the ALJ determined that the treatment record demonstrated Plaintiff required treatment for anxiety disorder and that Plaintiff reported symptoms of anxiety and panic attacks, the ALJ found Plaintiff's hearing testimony regarding the intensity, persistence, and limiting effects of her symptoms to be not entirely consistent with the medical evidence and other evidence in the record. *Id*. at 27. The ALJ discounted the severity of Plaintiff's mental health limitations for two reasons: (1) the medical record was inconsistent with Plaintiff's testimony; and (2) Plaintiff appeared to have engaged in drug seeking behavior, both of which the ALJ held diluted the strength of Plaintiff's claims.

Turning to the first ground, the ALJ found that "inconsistent with the rather extreme level of severity and functional limitation from anxiety alleged by the claimant, treatment notes show that she reported that medication and therapy was effective in treating her anxiety symptoms." *Id*. The ALJ further assessed that "[w]hile most of the notes indicate that the claimant was anxious, they consistently show that she had a normal range of affect; she was cooperative; and she had normal appearance and normal speech, thought processes, memory, intellectual function, and

orientation." *Id*. And the ALJ stated that "[c]onsistent with the above mental health treatment notes, most medical treatment also reflect an unremarkable presentation by the claimant; she was pleasant, cooperative, and alert, with no obvious abnormality in affect, speech, concentration, or other aspects of mental function." *Id*.

Plaintiff disagrees with the ALJ's findings and argues that her testimony regarding the severity of her symptoms is consistent with the opinions of psychologist Dr. Gibson and mental health counselor Loren Derr, MHNC, "both of whom opined disabling limitations." Dkt. No. 8 at 4. The ALJ, however, found Dr. Gibson's opinion regarding Plaintiff's difficulties to be "poorly supported and inconsistent with [the] longitudinal record." Dkt. No. 6-2 at 29. Likewise, the ALJ determined Loren Derr's opinion regarding Plaintiff's level of impairment to be "conclusory, unsupported, and inconsistent with the overall record." *Id*. at 30.

First, nowhere in Plaintiff's brief does she ever argue that the ALJ erred by discounting these medical professionals' opinions in assessing Plaintiff's benefits determination. As a result, Plaintiff waived any challenge to the ALJ's determination to discount these opinions, and these opinions cannot be considered to support Plaintiff's testimony. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) (holding the court cannot "manufacture arguments for an appellant" and therefore "will not consider any claims that were not actually argued in appellant's opening brief"); *see also Sekiya v. Gates*, 508 F.3d 1198, 1200 (9th Cir. 2007) ("Bare assertions and lists of facts unaccompanied by analysis and completely devoid of caselaw fall far short of the requirement that counsel present 'appellant's contentions and the reasons for them.'" (*quoting* Fed. R. App. P. 28(a)(9)(A)).

Second, the ALJ cannot reject an opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence. *See Woods v. Kijakazi*, 32 F.4th 792, 792 (9th Cir. 2022). Here, the ALJ provided an explanation supported by substantial evidence. For example,

the decision notes how she denied panic attacks or stated that she was able to handle her panic symptoms well. Dkt. No. 6-2 at 24. The ALJ points out how Derr's own treatment notes reflect that: (1) Plaintiff reported that medication and therapy was effective in treating her symptoms (Dkt. No. 6-2 at 30); (2) Plaintiff "reported that 'things are going well'" (*id.*); (3) Plaintiff denied panic attacks or stated she was able to handle her panic symptoms well (*id.*); and (4) providers assessed her mental symptoms as stable (*id.*).

Plaintiff also claims that she was "observed to be tearful throughout the longitudinal record, at any point where she was uncomfortable." Dkt. No. 8 at 4. But evidence of tearfulness alone is not sufficient to allege the ALJ erred. *See Sekiya*, 508 F.3d at 1200. Critically, Plaintiff appears to have omitted relevant information regarding *when* her tearfulness occurred. Dkt. No. 13 at 12. Sometimes Plaintiff's tearfulness coincided with her inconsistent use of prescribed anxiety medication. Dkt. No. 6-7 at 180, 227–28, 232, 234, 551. At other times, Plaintiff's tearfulness occurred when she was experiencing pain during a distressing medical episode or recalling such distress during a counseling session. Dkt. No. 6-7 at 242; Dkt. No. 6-8 (Emergency Department Records) at 16–17; Dkt. No. 6-9 (Hospital Records) at 9, 15–18; Dkt. No. 6-10 (Hospital Records) at 201–03; Dkt. No. 6-11 at 63–64, 83–84, 96–98; 113; 133–37.

There is "a presumption that ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022). As Plaintiff has not demonstrated the ALJ's decision constituted an unreasonable interpretation of the treatment record, and the ALJ has provided at least one clear and convincing reason supported by substantial evidence, the court need not address any other reasons the ALJ provided to discount Plaintiff's testimony because any error would ultimately be harmless. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

## IV. CONCLUSION

For the foregoing reasons, the Defendant's final decision is AFFIRMED and this case is DISMISSED WITH PREJUDICE.

DATED this 30th day of September, 2026.

TANA LIN
United States District Judge